[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner, the Department of Children and Families (DCF) has filed a petition alleging that the minor child John S., whose date of birth is February 15, 1990, is a neglected child. The petition was filed on December 22, 1995 at the Superior Court for Juvenile Matters in New Haven. Pursuant to CGS § 46b-120, it alleged that the child's mother, Lagreta R., neglected John S. by abandoning him, and by denying him proper care and attention physically. The petition was amended on October 29, 1996 to add specific allegations against the child's father, John S. Sr., and to add additional factual allegations against the respondent mother.
The matter was subsequently referred to this venue for trial, which was scheduled to begin on November 21, 1996. On that date, despite the fact that both had notice, neither the mother, nor the father, appeared in court. At the request of counsel for the respondent Lagreta R., the court granted a one-day continuance in the hope that counsel could secure the attendance of their respective clients at trial the following morning. On November 22, both parents again failed to appear, and neither attorney could offer adequate explanations for the respondents' absences. The court then directed that the matter would proceed without the presence of Lagreta R. and John S., Sr. The case was tried to completion on November 22. Each respondent, the minor child, and the petitioner were all represented by their respective counsel throughout the proceeding, and each of these attorneys participated in the trial.
During the trial, the court heard the testimony of the following witnesses:
1. Beverly H., mother's former housemate;
2. Kathy Kristhoffer, DCF Social Worker;
3. Kathy Marotta, DCF Social Worker
Neither of the respondents, nor counsel for the minor child, CT Page 8807 called any witnesses to testify at the trial.
FINDINGS OF FACT
The court, having carefully considered all of the evidence and testimony adduced at trial makes the following factual findings:
The respondent mother, Lagreta R., had lived for approximately three years in New Haven in the home of Betty H. During that time, the child John S., resided with his mother there, although he was also placed with other relatives at various times.
At the beginning of December, 1995, Betty Hunter went to North Carolina to visit with her relatives. While Ms. H. was in North Carolina, Lagreta R. arrived there and asked to stay with her relatives. This surprised Ms. H., who had not invited the respondent to come to North Carolina. Ms. H. claimed during her testimony at trial that she was shocked to see Lagreta R., particularly since the respondent did not know Ms. H.'s relatives. Nonetheless, she permitted Lagreta R. to stay. The respondent had traveled to North Carolina alone. She left John S. in New Haven, with Beverly H.'s sister.
Beverly H. returned to Connecticut in mid-December, around December 15th or 16th. The respondent remained in North Carolina after Ms. Hunter's departure. When Ms. H. arrived back in New Haven, her sister was still caring for John S. Ms. H. testified at trial that when she left North Carolina, Lagreta R. never told her when she would be returning to Connecticut to resume caring for her son. Ms. H. also testified initially at trial that she waited for a "week" after she returned home before calling DCF to complain that John S. had been abandoned by his mother. However, the evidence indicated that Ms. H. had in fact contacted DCF on December 19, 1995, which would have been three or four days after she returned to New Haven.
A DCF intake protocol document entered into evidence (Petitioner's Exhibit 1, Page 2) notes in part about the referral:
 "Caller states that mother has been living with her at this given address for the past three years. Mother . . . has a history of leaving her 5 yr old son, John, without making CT Page 8808 proper provisions for him. Currently, mother's whereabouts are unknown."
This document also noted that: "Caller states that there is no one to care for the child. The babysitter and or any other person is no longer willing to assume the responsibility for this child. The child's father, [John S. Sr] is presently incarcerated at Enfield Correctional Facility." (Petitioner's Exhibit 1, Page 2).
DCF Social Worker Kathy Kristhoffer was assigned to investigate the matter on December 19, 1995. She determined that Lagreta R. had gone out of state, and that the child's caretakers were no longer willing to assume responsibility for his custody. She also was unable on December 19th to locate a relative willing to care for John S. Betty H. told the social worker that Lagreta R. would no longer be welcome to live with her (H.) when she returned to Connecticut. Based on all of the forgoing, Ms. Kristhoffer confirmed parental neglect and DCF took custody of the child pursuant to a 96-hour administrative hold. The petitioner subsequently received an ex parte order of temporary custody, which was later confirmed at a hearing before the Superior Court for Juvenile Matters in New Haven. John S. was placed in a state-licensed foster home, where he has now remained continuously for the past 11 months.
Beverly H.'s testimony at trial lacked credibility with respect to certain issues. Although she claims that she did not have a disagreement with the mother, and that her referral to DCF was not motivated out of revenge, there was probative evidence at trial which suggested the opposite. As social worker Kristhoffer noted in a DCF report: "It does appear that the referral was made out of spite, but there were some issues anyway." (Petitioner's Exhibit 1, Page 6). In her report, Ms. Kristhoffer stated that "John was able to report that he hasn't seen his mother in a long time. Child could give no time frame. He also reported his mother used a belt on him." (Petitioner's Exhibit 1, Page 4)
Ms. Kristhoffer spoke with the mother over the telephone on December 21, 1995, after the respondent returned to Connecticut. Lagreta R. told the worker that she was going to stay with a boyfriend. On December 26th, the worker met in person with the respondent. Based on their conversation, Ms. Kristhoffer believed that the respondent's housing situation was unstable. During this meeting, the mother told that worker that she had asked the child's maternal grandmother to retrieve John S. from the H. and CT Page 8809 care for him until mother could return from North Carolina. The grandmother went to pick up the child, but Beverly H. refused to turn John S. over to her.
Although the social worker believed that a rift between Beverly H. and the respondent played a major role in the referral to DCF, she nonetheless believed that there were grounds for DCF to intervene. Ms. Kristhoffer testified at trial that she believed that the mother neglected John S. by leaving the state without making proper provisions for his care. She noted in her report that when she saw John S. on December 19th, it did not appear that he had been well-cared for by the H. She stated that DCF had a number of concerns about the child's situation, including the fact that the mother was now homeless. Additionally, the agency was concerned because the respondent had a prior history of neglect. DCF was also aware that Legreta R. had a prior history of substance abuse, although Ms. Kristhoffer said that it did not appear that the mother was abusing drugs around the time of the referral.
Kathy Marotta, a DCF treatment social worker, assumed the case from Ms. Kristhoffer. She met the child's father, John S. Sr., at the time of the OTC hearing. The father was incarcerated then, and told the worker that he did not want his son to see him in jail. He told Ms. Marotta that he would be in touch with her to schedule visits after his release from custody. He did not request any services besides visitation. The father had three supervised visits with John, the last in June 1996. He has not seen the child since then, and he has not remained in contact with DCF.
Ms. Marotta testified that her predecessor initially arranged for Legreta R. to visit John at his foster home. The mother was inconsistent visiting the child there, and, instead, made arrangements on her own to visit John at his school during the instructional day. DCF stopped these visits and required that the mother visit at the DCF offices. Legreta R. has not seen John S. since August 1996.
After the OTC was signed, the respondent agreed to get substance abuse treatment at the Northside Clinic in New Haven, and signed an authorization which allowed the petitioner to monitor her treatment there. The mother initially agreed with DCF that she'd receive weekly substance abuse therapy and submit to weekly drug tests, the results of which were sent to petitioner. CT Page 8810 The respondent initially complied with this informal expectation. She went to treatment and had a number of clean urine tests, although DCF records indicate that a drug screen administered on August 7, 1996 was positive for heroin. Lagreta R. subsequently rescinded the authorization which allowed the petitioner to communicate with the Northside Clinic.
In January 1996, the petitioner requested DCF's assistance in obtaining a security deposit for an apartment. The petitioner has some funds which can be utilized for this purpose. The parties stipulated at trial that despite the fact that the respondent had clean urine tests, had contact with DCF, and had visited with John S., DCF denied this request in March, 1996.
Since that time, the relationship between the petitioner and the respondent has deteriorated. The mother has failed to keep DCF advised of an address, and, as of the start of trial, her exact whereabouts were unknown to the petitioner. As noted above, the respondent has not visited her son since last August.
ADJUDICATION (based on facts as of October 29, 1996)
Despite the retaliatory nature of the initial referral in this case, the court finds that the mother's actions were both irresponsible, and neglectful. The respondent went out of state and left her son for several weeks without making suitable arrangements to ensure for his proper care. Although the mother's counsel contended at trial that the respondent's actions were appropriate, the court is not persuaded. The respondent left the state and her son for a protracted period of time. While the mother was away, John did not have a legal guardian in Connecticut. The respondent did not make proper arrangements for the child before leaving, and she entrusted John S. to an inappropriate caretaker. As DCF social worker Kathy Kristhoffer wrote in her investigation report: "At first [meeting] John did not appear well cared for by Ms. H." (Petitioner's Exhibit 1, Page 4). Admittedly, Beverly H.'s motivations in contacting DCF were less than pristine. But it was the respondent who chose to leave Connecticut after placing her child with such unwilling, unmotivated, and unacceptable surrogates. Furthermore, there was no evidence at trial that the respondent called to inquire about John while she was gone, and the evidence demonstrates that the mother was oblivious about what was happening to John in New Haven while she remained in North Carolina. CT Page 8811
Although Lagreta R. was initially compliant with DCF expectations after the OTC was granted, she is currently at loggerheads with the agency. The court accepts the fact that there has been no adjudication in this matter, and that the respondent has no legal obligation to do anything which DCF asks. However, the court is also aware that the informal expectations requested by the petitioner were drafted to assist mother in her efforts with reunification. It is obvious that the respondent distrusts the petitioner, and has complaints about her treatment by the agency. But these complaints do not excuse the fact that the respondent has failed to visit her child since last August.
The mother's initial actions in failing to properly care for John S. when she left him for several weeks to travel to North Carolina, and her subsequent actions in failing to visit him for approximately three months, constitute neglect on her part.
The father has claimed that no adjudication should enter against him. However, he was incarcerated at the time the child went into DCF placement, and he was unable — or unwilling — to provide for the child's care since his release from custody. Furthermore, he has failed to visit the child since June of 1996, despite the opportunity to do so. These omissions are clearly indicia of neglectful conduct toward John S. on his part.
Finally, the court notes that neither respondent, despite notice, appeared at the trial of this case.
Accordingly, based on all of the forgoing, the court finds as proven by a fair preponderance of the evidence the allegations of neglect against both respondents. The court further adjudicates the minor child, John S., to be a neglected child. The court also finds that prior to the OTC, reasonable efforts to prevent the child's removal from the home were not possible, and that since the OTC, the petitioner made reasonable efforts to reunify John S. with his family.
DISPOSITION
Having entered the forgoing adjudication, the court now addresses the issue of disposition. John S. has been in state foster care for the past 11 months. He does not now receive visits from either of his parents. His father's counsel stated at trial that John S. Sr. is not now a placement resource for his son. The mother's exact whereabouts are unknown to DCF, although CT Page 8812 mother's counsel has been able to communicate with her. It is suspected that she still is experiencing difficulty securing housing. Neither parent attended the trial. The father has not evidenced a willingness to accept services from the petitioner. The mother initially worked with DCF, but now distrusts DCF, and clearly has been unwilling during recent months to work with that agency.
Based on all of the forgoing, the court finds that it is clearly in the child's best interests that he remain under the care and custody of the petitioner. The court hereby commits John S. to the custody of the Commissioner of the Department of Children and Families for a period not to exceed 12 months.
The court further orders that both respondents, and all counsel of record, attend a hearing at the Child Protection Session in Middletown on January 7, 1997 at 11:30 a.m. The purpose of this hearing will be to set reasonable expectations, in keeping with those recommended in Petitioner's Exhibit 4, for each party. Counsel for each respondent, and the petitioner, are directed to use their best efforts to notify the respondents of the time, date, place and purpose of this hearing. This hearing will go forward, and court-approved expectations shall enter on that date, regardless of whether or not either, or both, of the respondents attend. DCF is further ordered to use its best efforts to provide reasonable and appropriate reunification services to the respondents.
The court commends all counsel for their professional demeanor and advocacy during the course of this trial.
Dated at Middletown, Connecticut this 27th day of November, 1996.
BY THE COURT
Dyer, J.